**WEAVER, Appellee,**

v.

**MOTORISTS MUTUAL INSURANCE COMPANY, Appellant.**

[Cite as *Weaver v. Motorists Mut. Ins. Co.* (1989), 62 Ohio App.3d 836.]

Court of Appeals of Ohio,
Montgomery County.

No. 11209.

Decided May 16, 1989.

*Carmine Garofalo* and *Robert M. O'Neal,* for appellee.

*Gary L. Froelich* and *Marybeth Rutledge,* for appellant.

GRADY, Judge.

The defendant-appellant, Motorists Mutual Insurance Co. ("Motorists Mutual"), appeals from an entry of summary judgment in the Court of Common Pleas of Montgomery County. The court held that appellant was required by its contract of homeowners insurance with the plaintiff-appellee, John D. Weaver, to defend Weaver in a defamation suit.

Weaver was a candidate in the general election of 1984 for the Ohio House of Representatives, 68th District. Weaver's opponent was the incumbent, Robert Netzley. Shortly before the November election, Weaver and his committee ran two political advertisements on WPTW radio in Piqua, Ohio. In the first advertisement, Weaver alleged that Netzley had voted to allow utilities to pass on costs to consumers and that Netzley had shared an apartment in Columbus with a utility lobbyist. The second, prepared by Weaver's committee, referred to the first advertisement and alleged that Netzley favored the interests of utility companies against those of consumers.

Netzley denied the allegations. Netzley won the election by a substantial margin.

In October 1985, Netzley filed a complaint in the Court of Common Pleas of Miami County, alleging that the advertisements were defamatory and had damaged him. Weaver notified Motorists Mutual, his insurer under a homeowners policy, of the suit and requested that Motorists Mutual defend and indemnify. The company declined to do so. Weaver retained his own counsel. The parties settled prior to trial.

On December 17, 1986, Weaver filed a complaint for declaratory judgment in the Court of Common Pleas of Montgomery County, alleging that Motorists Mutual was legally liable, pursuant to its contract of insurance, to provide his defense in the Miami County defamation suit. Motorists Mutual filed an answer and its own counterclaim for declaratory judgment. On February 12, 1988, the trial court granted Weaver's motion for summary judgment on his complaint. On September 20, 1988, the trial court granted Weaver judgment in the amount of $17,274.10, representing Weaver's legal fees and expenses in both the action brought by Netzley and the summary judgment proceeding. From the judgment so entered, Motorists Mutual has filed a timely notice of appeal to this court.

Appellant presents a single assignment of error: "The trial court erred to the prejudice of appellant Motorists Mutual Insurance Company in denying appellant's motion for summary judgment and in granting the motion for summary judgment of appellee John D. Weaver."

The sole issue presented by both parties is whether the insurance contract obligated Motorists Mutual to defend and/or indemnify Weaver in the defamation action brought by Netzley.

The duty of an insurance company to defend an action against its insured may be determined from the allegations in the petition or complaint brought against the insured. *Socony–Vacuum Oil Co. v. Continental Cas. Co.* (1945), 144 Ohio St. 382, 29 O.O. 563, 59 N.E.2d 199, paragraph one of the syllabus. Those allegations are not the sole basis for that determination, however. When the insurer demonstrates through an action for declaratory judgment, brought in good faith, that the alleged acts of the insured are outside the scope of the policy coverage, there is no duty to defend and the insurer is entitled to relief so declaring. *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118. The insurer is entitled to seek that relief, " * * * even where the underlying tort complaint alleges conduct within the coverage of the contract of insurance." *Id.* at paragraph one of the syllabus.

■ The sequence of events contemplated in *Preferred Risk* would have the declaratory judgment determined prior to the trial of the tort action. That was not the case here. Motorists Mutual declined to defend in the tort action and Weaver provided his own defense. However, both parties may now seek declaratory relief construing the insurance contract as against the claims made in the tort action.

■ In determining the contract obligations of Motorists Mutual, the trial court relied upon *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555. The rule in that case determines coverage solely upon the allegations in the complaint. It requires coverage when the allegations are even "potentially or arguably" covered by the policy terms. *Id.* at syllabus. However, that rule was largely superseded by *Preferred Risk*, which allows an inquiry behind the allegations in the underlying tort action. Further, *Preferred Risk* specifically limits the *Willoughby Hills* analysis and coverage obligations to cases in which the insurer has promised to defend all claims, even those that are false, fraudulent or groundless.

■ In addition to the particular acts alleged, questions of policy coverage must look to the contract itself, and its defined coverage and exclusions. "A contract of insurance prepared and phrased by the insurer is to be construed liberally in favor of the insured and strictly against the insurer, where the meaning of the language used is doubtful, uncertain or ambiguous." *Munchick v. Fidelity & Cas. Co. of New York* (1965), 2 Ohio St.2d 303, 31 O.O.2d 569, 209 N.E.2d 167, paragraph one of the syllabus, quoting *Toms v. Hartford Fire Ins. Co.* (1945), 146 Ohio St. 39, 31 O.O. 538, 63 N.E.2d 909, paragraph one of the syllabus. And, in construing exceptions, "a general presumption arises to the effect that that which is not clearly excluded from the operation of [the] contract is included" in its operation. *Home Indemn. Co. v. Plymouth* (1945), 146 Ohio St. 96, 32 O.O. 30, 64 N.E.2d 248, paragraph two of the syllabus.

■ The Netzley complaint alleges that Weaver made false and defamatory statements concerning Netzley, damaging his reputation and causing him loss, pecuniary and emotional. Defamation is that which tends to injure reputation; to diminish the esteem, respect, goodwill or confidence in which a plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him. In general, persons who publish or assist in publishing an actionable defamatory statement are liable for the resultant injury. 35 Ohio Jurisprudence 3d (1982), Defamation and Privacy, Section 97, at 534.

Weaver's statements about Netzley concerned his actions as a public official. To prevail on his claim, Netzley would be required to show that

Weaver made the statements with "actual malice." *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686, 706. To prove actual malice it must be shown "that the totality of the circumstances demonstrate[s] with convincing clarity that the false statements were published with prior knowledge of their falsity or with 'serious doubts' as to their truth or a 'high degree of awareness' of probable falsity."

See, also, *Grau v. Kleinschmidt* (1987), 31 Ohio St.3d 84, 92, 31 OBR 250, 256, 509 N.E.2d 399, 405–406, citing *Garrison v. Louisiana* (1964), 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125; *St. Amant v. Thompson* (1968), 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262; and *Scott v. News–Herald* (1986), 25 Ohio St.3d 243, 25 OBR 302, 496 N.E.2d 699.

The contract between the parties states in its Section II–Liability Coverages:

"If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage *to which this coverage applies,* we will:

"a.    pay up to our limit of liability for the damages for which the insured is legally liable;  and

"b.    provide a defense at our expense by counsel of our choice.    * * * "[1] (Emphasis supplied.)

"Bodily injury" is defined in the policy to mean "bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom." "Property damage" is defined to mean "physical injury to or destruction of tangible property, including loss of use of this property."

The policy sets out three "coverages" at Section I;  the dwelling on the residence premises identified in the contract;  at 615 Market Street, Brookville, Ohio;  other structures on the residence premises;  and personal property owned or used by the insured anywhere in the world and property owned by others while the property is on the residence premises.  The policy also adds coverages for loss of use of the residence premises and additional coverages, which are confined to property loss.  Also specified are "perils insured against," all of which concern damage to or loss of property.

The trial court erred in its analysis of appellant's duty to defend and indemnify in following the rule of *Willoughby Hills.*  The scope and extent of

---

1.    The policy claimed by Weaver to be in effect at the relevant time contained the additional promise to defend " * * * even if the suit is groundless, false or fraudulent."  The policy claimed by Motorists Mutual to be in effect at the relevant time does not contain that additional promise.  The trial court adopted the version advanced by Motorists Mutual, *i.e.,* without the additional promise.  No error is claimed in that regard, and none is apparent.

duty there required has been limited by *Preferred Risk* to policies which promise to defend all claims, even those that are false, fraudulent or groundless. Appellant's policy does not make that promise, and the scope of its coverage must be determined from its own terms.

The argument advanced on behalf of Weaver begins its effort to determine policy coverage with the provision concerning "Liability Coverages" quoted above. That provision, however, is not a general promise to defend and indemnify on all liability claims made against Weaver. Rather, it is a promise to defend and indemnify against and for claims for personal liability arising from the basic *coverages* set up in the policy.

■ The scope of the coverage set up in the insurance contract between Motorists Mutual and Weaver is limited to losses or injuries connected with the real and personal property identified. The Liability Coverages section promises only to defend and indemnify Weaver on claims made against him by others for bodily injury or property damage arising from the real and personal property covered.

The Netzley defamation complaint alleged "bodily injury," as that term is defined in the contract. The scope of coverage in the contract does not, however, include the tortious act alleged, *i.e.*, defamation. Neither the scope of the allegations in the complaint in the *Netzley* matter nor the facts and matters brought out in the declaratory judgment action support a finding that the claim against Weaver is within the coverage of the Motorists Mutual policy, which is, essentially, a homeowners premises liability policy.

We find that the subject policy of Motorists Mutual does not contain a promise to defend or indemnify Weaver in the defamation claim or action brought by Netzley. Though the parties have raised numerous other arguments as to exclusions, our finding concerning scope of coverage renders them moot and they need not be considered.

Appellant's assignment of error is sustained. The judgment of the trial court is reversed and vacated. The cause is remanded to the trial court for entry of a judgment consistent with this opinion.

*Judgment reversed.*

WILSON and BROGAN, JJ., concur.